IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville October 13, 2015

**SANTOS CASTILLO MECHADO v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-I-542    Mark J. Fishburn, Judge**

———————————————

**No. M2015-00522-CCA-R3-PC – Filed November 23, 2015**

———————————————

The Petitioner, Santos Castillo Mechado, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2013 convictions for kidnapping and attempted aggravated robbery. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Jesse Lords, Nashville, Tennessee, for the appellant, Santos Castillo Mechado.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 5, 2013, the Petitioner pleaded guilty by information to kidnapping and attempted aggravated robbery and received an effective eight-year sentence in confinement. At the guilty plea hearing, the prosecution summarized the underlying facts as follows:

[O]n April 7th of 2013, the victim . . . was a roommate of the defendant's. The victim said he had been having an affair with the defendant's wife and [the defendant] found out about it. The defendant became angry and got a kitchen knife and placed it on the victim's throat, threatening to kill him. He forced the victim into a vehicle and took his ID and debit card. He then drove to a bank and forced him to withdraw $600. When they returned to the residence,

the victim escaped out the back door and ran to call police. During a consent search of the defendant's vehicle, they located the kitchen knife that was used in the crime, as well as the victim's ID and debit card.

The trial court told the Petitioner through an interpreter, "if for any reason you need to speak to your attorney during the course of these proceedings, let me know that, and I'll stop the proceedings and give you an opportunity to have those discussions before we proceed any further." The Petitioner said he understood. The Petitioner told the court that he had a third-grade education, that he could speak "a little bit" of English, and that he could read and write in Spanish. When asked if there was any reason he could not "fully understand and appreciate" the plea proceedings, the Petitioner answered. "No, everything's all right."

The Petitioner told the court that trial counsel, who spoke Spanish, read the plea agreement form to him and satisfactorily answered any questions he had. The Petitioner agreed that he understood the contents of the plea agreement, the charges against him, and the possible punishment associated with those charges. The Petitioner affirmed that the plea agreement said he would serve eight years at thirty percent, that he had to stay away from the victim, and that if paroled, he had to pay the victim $800 restitution. When asked whether he had questions regarding the charges, the potential punishment, or the sentence to be served, the Petitioner asked, "Just want to know how much time I'm gonna have to do?" The court answered that the Petitioner could expect between two and six and one-half years but that the decision belonged to the parole board. The Petitioner said he was aware that upon his release from prison, federal immigration authorities would initiate deportation proceedings.

Trial counsel told the trial judge that he believed the Petitioner understood the charges against him and the substance of the plea agreement. Relative to the State's recitation of the facts, the Petitioner told the trial court that "most of the things [were true], but some things aren't." When the judge asked whether the Petitioner forced the victim to withdraw money from the bank, the Petitioner said, "With words I did." When the judge asked if the Petitioner was "going to waive your rights today and plead guilty," the Petitioner said "Yes."

The Petitioner affirmed for the trial court that he and counsel had discussed the facts and circumstances of his arrest, the evidence against him, the applicable law, and the potential defenses to the charges. The Petitioner said that counsel answered his questions. The judge asked the Petitioner if he had complaints about counsel, but the transcript does not reflect a verbal response.

The trial court explained to the Petitioner his pretrial and trial rights, including a right to confront witnesses, a right to a jury, and a right to an appeal. The Petitioner said he did

not have any questions regarding his rights as a criminal defendant. The court further explained that a guilty plea waived the right to a trial and an appeal, and the Petitioner said he understood. When asked whether anyone had threatened or promised anything to procure the Petitioner's guilty plea, the Petitioner answered "No."

On April 11, 2014, the Petitioner timely filed a petition for post-conviction relief, alleging that trial counsel provided ineffective assistance because counsel made improper promises in order to induce the Petitioner's guilty pleas. The Petitioner argued that he was promised confinement at a local facility, allowing his family to visit, and that the court interpreter at the guilty plea hearing did not communicate a concern the Petitioner had to counsel or the trial court.

At the post-conviction hearing, the Petitioner testified through a court interpreter. He said that between the time of his arrest and the guilty plea hearing, trial counsel visited him twice. He said that each meeting lasted ten to fifteen minutes and that at their second meeting, counsel told him "the best offer was the 8 [years at thirty percent and] I should plead guilty." The Petitioner said counsel told him that the Petitioner would not be confined in a state prison because his charges were not "very" serious. The Petitioner said that he wanted his three children to be able to visit him and that being close to his family was important to his decision to plead guilty.

The Petitioner testified that trial counsel never provided him any discovery materials. The Petitioner said he told counsel that he "had not robbed anything, that the gentleman had loaned me money. [Counsel] just told me that I was guilty regardless because he had already accused me[.]" The Petitioner said that he did not know he could dismiss counsel and hire another attorney.

The Petitioner testified that at the guilty plea hearing, he told the interpreter that the charges read by the court were not accurate. The Petitioner said that the interpreter claimed the interpreter could do nothing and that the interpreter did not relay the Petitioner's concern to counsel. The Petitioner said he never contacted counsel about what happened at the guilty plea hearing. The Petitioner said that had he known he would not be confined at a local facility, he would not have pleaded guilty because he did not think he was guilty.

On cross-examination, the Petitioner testified that he and trial counsel discussed the charges, including the victim's allegations and the items found during the consent search of the Petitioner's car. The Petitioner acknowledged that he signed the plea agreement form and that the form included his sentence.

The Petitioner testified that he did not remember the trial judge's saying at the guilty plea hearing that the Petitioner could stop the proceedings at any time if he had questions for trial counsel. The Petitioner said he understood the charges against him and remembered asking the court how much time he would serve.

Upon examination by the post-conviction court, the Petitioner testified that he had been confined at the Northwest Correctional Complex, almost 200 miles from Davidson County, for one year. The Petitioner said he understood that if his petition were granted, he would face a twelve-year sentence without parole eligibility.

Trial counsel testified that he had eight years' experience in criminal defense and that he remembered the Petitioner's case. Counsel negotiated a plea agreement when he represented the Petitioner in general sessions court. Counsel said that once retained, he generally read the warrant, met with his client, and spoke with the prosecutor about negotiating a plea agreement. Counsel said that at a second meeting with a client, he presented the benefits and consequences of accepting a plea offer and allowed the client to decide whether to accept or reject the offer. Counsel said that the second meeting usually lasted fifteen to twenty minutes.

Trial counsel testified that he did not remember whether the Petitioner denied committing the offenses. Counsel said that after meeting with the Petitioner about the plea offer, they did not meet again because "there's really not much to talk about, and if I don't hear from them then, I'm assuming the deal's still on." Counsel said that he spoke fluent Spanish and communicated well with the Petitioner.

Trial counsel testified that the plea agreement provided predictability, that a trial would have been an "incredible" risk to the Petitioner, and that the Petitioner pleaded guilty to lesser included offenses of the charged crimes. Counsel said that "defendants always have a hesitation" about pleading guilty and that "I'm sure [the Petitioner] wanted to fight the case, but . . . I think for him the certainty of what was [going to] happen [was] when he decided to accept" the plea offer. Counsel said that he never would have told the Petitioner that the Petitioner had to plead guilty. He denied that he and the Petitioner discussed where the Petitioner would be confined and said he had no control over that determination.

Trial counsel testified that if the Petitioner had attempted to obtain counsel's attention or had asked him or the court interpreter any questions at the guilty plea hearing, counsel would have ended the proceedings. Counsel said that after a plea agreement had been reached in a criminal information case, he typically did not ask for discovery.

On cross-examination, trial counsel testified that an initial interview with a client generally took one hour and that he reviewed a copy of the warrant with his client and listened to the client's version of events. He said that he translated court documents to Spanish-speaking clients. Counsel said the Petitioner never mentioned at the guilty plea hearing that the Petitioner spoke a different dialect than the court interpreter. Counsel did not know why the Petitioner thought that counsel could influence where the Petitioner was confined. Counsel said that he understood the exchanges between the Petitioner and the interpreter and that if counsel had heard the Petitioner ask the interpreter a question, counsel would have ended the proceedings because "that's not the interpreter's job to answer any questions." Counsel said that if the Petitioner had reservations about entering the guilty pleas, counsel would have ended the proceedings and prepared for a trial.

The post-conviction court denied relief. The court found that trial counsel conveyed the plea offer to the Petitioner and explained the advantages and disadvantages of accepting it. The court noted that at the guilty plea hearing, the trial court told the Petitioner that he could ask questions at any time. The post-conviction court also found that the trial court asked the Petitioner a detailed series of questions relative to his plea, including whether the Petitioner understood and discussed with counsel the charges against him, whether the Petitioner's understanding of the contents of the plea agreement corresponded with the written document presented to the court, whether the guilty plea had been induced by improper promises, and whether the Petitioner was satisfied with counsel. The post-conviction court found that the Petitioner's answers indicated that he understood the contents of the plea, was satisfied with counsel, and was made no promises in exchange for his pleas. The court noted the only question the Petitioner asked the trial court was how much time the Petitioner would serve. The post-conviction court found that no communication problems existed between counsel and the Petitioner. The court found that no improper promises were made.

## Analysis

The Petitioner contends that the post-conviction court erred in finding he received the effective assistance of counsel. The State responds that the Petitioner did not prove by clear and convincing evidence that trial counsel promised the Petitioner confinement in a local facility to induce a guilty plea and that this court should not disturb the post-conviction court's finding that counsel made no such promise.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f)

(2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In the present case, the evidence in the record does not preponderate against the post-conviction court's finding that the Petitioner "was sufficiently informed of the nature of the charges against him, the consequences of making a guilty plea in open court, and that such plea was free from improper promises or threats." In determining that trial counsel did not promise the Petitioner confinement at a local correctional facility, the court noted that the

trial judge asked the Petitioner, "Has anyone threatened you with anything or promised you anything in order to get you to enter these pleas?" and that the Petitioner answered "No." Counsel testified that he did not know why the Petitioner thought counsel could influence the location of the Petitioner's confinement. The guilty plea hearing transcript supports the post-conviction court's finding.

Relative to the Petitioner's testimony regarding his exchange with the court interpreter during the guilty plea hearing, the post-conviction court found that "the record does not reflect that [the Petitioner] had any questions during the plea colloquy." Trial counsel testified at the post-conviction hearing that if the petitioner had asked the interpreter a question, counsel would have stopped the hearing because answering questions was not the interpreter's responsibility. The post-conviction court found that the Petitioner was "informed of his right to stop the proceedings so that he could ask his attorney questions at any point" and that the Petitioner did not have any questions during the plea colloquy. We note that the Petitioner did not call the interpreter as a witness or present other evidence of the exchange at the post-conviction hearing. The record does not preponderate against the post-conviction court's findings.

We also note that during the guilty plea hearing, the Petitioner objected to a portion of the recited facts but acknowledged upon questioning by the trial court that the Petitioner forced the victim to withdraw money from a bank "with words." The Petitioner then proceeded to enter his guilty pleas. The Petitioner also asked the trial court how much time he would serve. The Petitioner participated in the plea colloquy by adding comments and asking questions, and the record does not preponderate against the post-conviction court's finding that the Petitioner did not ask further questions of counsel during the hearing. Because the Petitioner did not prove by clear and convincing evidence that he was denied an opportunity to ask questions, we conclude that the Petitioner has failed to establish counsel provided deficient performance. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE